**RK DIXON CO., Plaintiff,**

v.

**DEALER MARKETING SERVICES, INC., Defendant.**

**No. 3:03–CV–40070.**

United States District Court,
S.D. Iowa,
Davenport Division.

Sept. 25, 2003.

Peter C. Fieweger, Katz Huntoon & Fieweger PC, Rock Island, IL, for plaintiff.

Hector L. Lareau, Pappas & Schnell PC, Rock Island, IL, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND DEFENDANT'S MOTION TO DISMISS, TRANSFER OR STAY

GRITZNER, District Judge.

This matter comes before the Court on Plaintiff's Motion for Remand (Clerk's No. 3) and Defendant's Motion to Dismiss, Transfer or Stay pursuant to 28 U.S.C. § 1404 and Federal Rule of Civil Procedure 12(b) (Clerk's No. 4). RK Dixon Co. ("RK Dixon") is represented by Peter C. Fieweger; Dealer Marketing Services, Inc. ("Dealer") is represented by Hector Lareau. Neither party has requested a hearing on these motions. For the reasons discussed herein, both RK Dixon's Motion for Remand and Dealer's Motion to Dismiss, Transfer or Stay will be denied.

### PROCEDURAL HISTORY

Plaintiff RK Dixon filed its original petition seeking damages for breach of two contracts as well as repudiation of the second contract in the Iowa District Court for Scott County on July 2, 2003. On July 9, 2003, there being complete diversity and an adequate amount in controversy for diversity jurisdiction pursuant to 28 U.S.C. § 1332, Defendant Dealer removed this suit to the United States District Court for the Southern District of Iowa, Davenport Division. Removal by Dealer was both timely and without procedural defect under 28 U.S.C. §§ 1441 and 1446 and L.R. 81.1.

On July 2, 2003, at or near the same time as the petition was filed by RK Dixon in Scott County, Dealer instituted a paral-

lel action[1] in the United States District Court for the Central District of Illinois, Rock Island Division, for breach and rescission of the second contract between the parties. In that action, the role of the parties is the reverse of that in the present action before this court.[2]

Following removal of the Plaintiff's Scott County action to this Court, Dealer moved to dismiss, transfer or stay these proceedings. The motion prays for this Court to take one of the following actions: transfer for consolidation with the Illinois action pursuant to 28 U.S.C. § 1404; in the alternative, dismiss for improper venue under Rule 12(b)(3); or stay these proceedings until resolution of the Illinois action, which Dealer claims was filed first.

## SUMMARY OF MATERIAL FACTS

RK Dixon is an Iowa corporation having its principal place of business in Davenport, Iowa; Dealer is an Illinois corporation with its principal office located in Rock Island, Illinois. RK Dixon sells office machines and also provides computer networking consulting services. Dealer is a software and service company serving the retail automobile industry.

On or about August 10, 2000, RK Dixon and Dealer entered into a Network Support Agreement. In accordance with the terms of the contract, RK Dixon provided network maintenance, consulting, and support services to Dealer from August 2000 until April 14, 2003. Dealer paid the charged amounts for these services until March 16, 2003. RK Dixon alleges that Dealer failed to pay charged amounts for consulting, maintenance, and support services provided to Dealer for the period between March 16, 2003, and April 14, 2003. RK Dixon further claims Dealer failed to pay for hardware and software supplied under the terms of the Network Support Agreement by RK Dixon to Dealer during this time period. RK Dixon maintains the failure to pay these charges, along with the fact that Dealer refused access to RK Dixon employees after April 14, 2003, constitutes a material breach of the Network Support Agreement. RK Dixon is seeking $47,773 plus interest from Dealer for breach of this contract.

In addition, on or about January 7, 2003, the parties entered into a Hot Site Disaster Recovery Services Agreement ["Hot Site Agreement"]. RK Dixon claims to have provided the back-up system and implemented the plan for the hot site disaster recovery services as set forth in the agreement. RK Dixon alleges that Dealer has repudiated this agreement by refusing to allow employees of RK Dixon to perform any contract services at Dealer's premises, by failure to pay monthly installments and the activation fee, and by informing RK Dixon that Dealer would no longer do business with it after April 14, 2003. RK Dixon seeks judgment in the amount of $236,700 for the repudiation and material breach of the Hot Site Agreement.

Meanwhile, Dealer brought an action in a federal court in Illinois for breach and rescission of the Hot Site Agreement, as well as for breach of fiduciary duties on the part of RK Dixon. Dealer alleges that RK Dixon breached the Hot Site Agreement by failing to perform its obligations in a good and workmanlike manner. Deal-

---

1.  While not identical, the lawsuits do involve similar factual and legal issues and some overlapping claims stemming from the parties' relationship and service agreements.

2.  According to the filings made before this Court, RK Dixon has a motion pending in the case filed by Dealer in the United States District Court for the Central District of Illinois, Rock Island Division, to dismiss the action by reason of lack of personal jurisdiction over RK Dixon.

er's complaint in the Illinois action also includes claims of breach of fiduciary duty and breach of condition precedent to the Hot Site Agreement. Dealer, in its complaint filed in Illinois, seeks damages in excess of $75,000 and rescission of the Hot Site Agreement for approximately $275,000 in services. The Illinois complaint makes no mention of the Network Support Agreement entered into in August 2000, the alleged breach of which makes up part of RK Dixon's action in this court.

The Network Support Agreement contains a forum selection clause. Specifically, the contract states "[a]ny suit or other proceeding to enforce or construe this Agreement shall be brought in the District Court of Scott County." The contract further provides that "[t]he interpretation of the terms and provisions of the Agreement shall be governed by the laws of the State of Iowa." The Hot Site Agreement does not contain a forum selection clause.[3]

Both parties seek to have the case tried in the venue they have chosen, hence the apparent "race to the courthouse" and the resulting motions to have the case heard in the court of the movant's choosing. Both agree that allowing both suits to continue may result in inconsistent results and duplication of judicial effort, although, due to the unique nature of the Quad Cities area, including both Rock Island, Illinois, and Davenport, Iowa, the convenience of the parties and witnesses seems to be equal in the federal courts located in Rock Island,

Illinois, and Davenport, Iowa,[4] and in state court in Scott County, Iowa.

## ANALYSIS

At issue before the Court are two pending motions. The Plaintiff has filed a motion to remand the case to the Iowa District Court in Scott County. This motion is based on a forum selection clause contained in one of the agreements at issue in this lawsuit. The Defendant has filed its own motion seeking a change of venue in the form of a motion to dismiss, transfer or stay the action currently pending before this Court, while a parallel lawsuit filed by the Defendant against the Plaintiff in a United States District Court located in Illinois proceeds. This motion is based primarily on the federal transfer statute[5] and the "first-filed" rule found in the case law discussing this statute. In the alternative, the Defendant seeks to have this lawsuit either stayed pending the outcome of the case in Illinois or dismissed in its entirety. The unusual procedural and circumstantial nature of this case requires a complex legal analysis.

### A. Plaintiff RK Dixon's Motion to Remand.

RK Dixon has filed a motion to remand this action to the Iowa District Court located in Scott County where the lawsuit was originally filed prior to being removed by Dealer. The basis for Plaintiff's motion is the existence of a forum selection clause

---

**3.** The pleadings reflect some confusion between the parties as to what agreement contains the forum selection clause. RK Dixon consistently refers to the Network Support Agreement attached to its pleadings as Exhibit 1 as containing a forum selection clause. Dealer, on the other hand, argues in its Reply to RK Dixon Co.'s Resistance to Dealer Marketing's Motion to Dismiss, Transfer or Stay that any forum selection clause in the *Hot Site Agreement* should be disregarded as void be-

cause the underlying Hot Site Agreement is unenforceable.

**4.** As a result of remodeling efforts at the U.S. District Courthouse in Davenport, and by special accommodation of the U.S. District Court for the Central Division of Illinois, any trial of the case now pending in this Court would likely come on for trial in the same Rock Island, Illinois, court building.

**5.** 28 U.S.C. § 1404.

in one of the parties' agreements at issue in this case. The Court must first determine whether a valid forum selection clause can form a proper ground for remand of an action removed to federal court on the basis of diversity jurisdiction. *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1214 (3d Cir.1991). If this power exists, the Court must then determine the validity and enforceability of the forum selection clause in the Network Support Agreement. Finally, the Court must decide whether remand is proper under the unique circumstances of this case.

### 1. Remand based on forum selection clause.

▮▮▮ The decision whether to enforce a forum selection clause is determined by federal law.[6] *Wilkinson Co. v. Krups N. Am., Inc.*, 48 F.Supp.2d 816, 818 (N.D.Ill. 1999) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). While the Eighth Circuit has not directly addressed the issue of whether remand is available as a way to enforce a forum selection clause, several other federal courts have discussed the issue, and their reasoning and decisions are helpful in resolving this issue.

Following the Supreme Court decision in *Carnegie–Mellon University v. Cohill*, some courts have "acknowledge[d] the district court's inherent power to remand a removed case when appropriate to enforce a forum selection clause." *See Snapper, Inc. v. Redan*, 171 F.3d 1249, 1263 n. 26 (11th Cir.1999) (discussing the decision in *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and the resulting decisions that 28 U.S.C. § 1447(c) did not state the exclusive grounds for remand); *Foster*, 933 F.2d at 1214–16 (finding remand based on a forum selection clause was lawful even though

not specifically authorized by § 1447(c)); *McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199, 1203 (5th Cir.1991) (noting remand was appropriate in a case involving a forum selection clause). *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996) (holding remand based on the non-statutory grounds—not specified by § 1447(c)—of abstention was lawful).

The decision to remand can turn on whether there has been a waiver of the right to remove a case to federal court. *See, e.g., Logan v. Associated Int'l Ins. Co.*, 131 F.Supp.2d 986, 988 (N.D.Ill.2001). Parties may waive the right to remove. *Foster*, 933 F.2d at 1216. A forum selection clause is one way parties can contractually waive the right to remove. *See, e.g., Wilkinson Co.*, 48 F.Supp.2d at 818 (finding plaintiff "waived its own right to a convenient forum by freely entering into the Agreement containing the forum-selection clause."); *Little League Baseball, Inc. v. Welsh Publ'g Group, Inc.*, 874 F.Supp. 648, 655 (M.D.Pa.1995) (stating that parties to a contract "may waive the right to remove a case to federal court through an express waiver contained in the contract" and accepting that a forum selection clause could constitute such an express waiver even though the language in the clause before the court was not found to contain a valid waiver). "A district court may order remand of a case removed in violation of a forum selection clause which constitutes a valid waiver of the right to remove." *Little League Baseball, Inc.*, 874 F.Supp. at 655. "Intent to establish a waiver of the right of removal may be inferred from the language of the forum selection clause." *Air Ion Devices, Inc. v. Air Ion, Inc.*, 2002 WL 1482665 *2 n. 3 (N.D.Cal.) (citing *Re-*

---

**6.** The Court does note, however, that forum selection clauses are accepted in Iowa. *See*

*EFCO Corp. v. Norman Highway Constructors, Inc.*, 606 N.W.2d 297, 299 (Iowa 2000).

*gis Assocs. v. Rank Hotels (Mgmt.) Ltd.,* 894 F.2d 193, 195 (6th Cir.1990)).

A forum selection clause is a manifestation of the parties' expectations of where any resultant litigation will take place. Enforcement of a forum selection clause gives "effect to the legitimate expectations of the parties." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). "Thus, if a defendant has removed a case in violation of a forum selection clause, remand is a particularly appropriate and effective remedy for the wrong." *Foster,* 933 F.2d at 1216. Moreover, the diversity jurisdiction of the federal courts does not demand denial of enforcement of a forum selection clause. *See Spatz v. Nascone,* 368 F.Supp. 352, 356 (W.D.Pa.1973) ("We do not find in any of the discussions relating to diversity jurisdiction . . ., any stated policy that where the parties have made a choice of forum, that forum should not be enforced because of the diversity jurisdiction of the Federal Courts."). The Court finds that a forum selection can be the basis for remand.

## 2. Enforceability of forum selection clause.

The Supreme Court has pointed out that "a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622 (1991) (citing *Stewart Org., Inc.,* 487 U.S. at 33, 108 S.Ct. at 2246 (concurring opinion)). In *The Bremen v. Zapata Off-Shore Co.,* the Supreme Court found forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen,* 407 U.S. at 10, 92 S.Ct. at 1913. The Supreme Court concluded that a forum selection clause "should control absent a *strong* showing that it should be set aside." *Id.* at 15, 92 S.Ct. at 1916 (emphasis added).

Some of the factors important in determining reasonableness of a forum selection clause are whether the clause was the result of an arm's-length transaction, the experience and sophistication of the parties involved in the negotiation, the comparative bargaining positions of the parties, and representation of the parties by legal counsel. *See id.* at 12, 92 S.Ct. at 1914; *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 922 F.Supp. 1334, 1344 (N.D.Iowa 1996). *See also Med. Legal Consulting Serv. v. Covarrubias,* 648 F.Supp. 153, 156 (D.Md.1986) (listing nine factors that have been considered by courts in determining the reasonableness of a forum selection clause). The Supreme Court has found forum selection clauses to be valid even where there have not been actual negotiations concerning the clause. *Carnival Cruise Lines, Inc.,* 499 U.S. at 594, 111 S.Ct. at 1527.

Furthermore, a forum selection clause will be enforced except where the party opposing enforcement of the clause can clearly show that this result would be unreasonable or unjust, or that the clause itself is invalid. *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916. A forum selection clause will be unreasonable or unjust where it is shown "that the forum thus selected is 'so gravely difficult and inconvenient that [the defendant] will for all practical purposes be deprived of his day in court.'" *Foster,* 933 F.2d at 1219 (quoting *M/S Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917). The reasons for invalidity of a forum selection clause include fraud or overreaching, *see id.,* duress, illegality, and

other conventional grounds for invalidating a contract. *See Northwestern Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 376–77 (7th Cir.1990).

Thus, where a forum selection clause is made "in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be . . . enforced by the courts." *M/S Bremen,* 407 U.S. at 12, 92 S.Ct. at 1914. The court must look at the forum selection clause, the parties to the contract, and the underlying negotiations to determine the validity of the clause.

### 3. Count I of Plaintiff's Petition: Breach of Network Support Agreement

■ As discussed, an *enforceable* forum selection clause can form the basis for remand. The forum selection clause in the Network Support Agreement is enforceable as Dealer has failed to give any evidence that it is unreasonable or that the clause itself is invalid. Dealer has not argued reasonableness of the forum selection clause, and its only arguments concerning the validity of the clause were directed to a forum selection clause in the Hot Site Agreement [7] and not the clause in the Network Support Agreement. RK Dixon and Dealer appear to be experienced and sophisticated business entities. There is no evidence that the Network Support Agreement was not part of an arm's-length transaction. While not apparent from the record whether counsel participated in the negotiations of the Network Support Agreement, both parties

would have had access to representation if necessary. Further, there has not been a showing of unequal bargaining strength of the parties. The Court also finds that the forum selection clause here is not so gravely unfair or burdensome that Dealer will effectively be deprived of its day in court. *See Foster,* 933 F.2d at 1219 (quoting *M/S Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917). In fact, Dealer may actually see this action end up in multiple courts. Based on the foregoing, the Court finds the forum selection clause in the Network Support Agreement is neither unreasonable nor invalid.

■ An additional issue is whether the forum selection is exclusive and mandatory, or whether it is merely permissive. *See Terra Int'l, Inc.,* 922 F.Supp. at 1370. This is a matter of contract interpretation. *Id.* The forum selection clause in the Network Support Agreement provides: "Any suit or other proceeding to enforce or construe this Agreement shall be brought in the District Court of Scott County." The use of the word "shall" indicates a mandatory command and is not merely precatory. *See Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342, 1345–46 (10th Cir.1992) ("the use of the word "shall" generally indicates a mandatory intent unless a convincing argument to the contrary is made."); *Air Ion Devices, Inc.,* 2002 WL 1482665 at *2 n. 2 (disagreeing with contention "that 'shall' is merely a precatory, not a mandatory, command"). Thus, the clause as stated in the Network Support Agreement is mandatory and not permissive. The Court finds, in addition, that this language establishes that, according to

---

7. *See* discussion *infra,* footnote 4. It is not apparent whether this was a mistake on the part of the Defendant. Regardless, the Defendant could not argue the invalidity of the forum selection clause in the Network Support Agreement. The Network Support Agreement was entered into by the parties in August of 2000 for a one-year term and was

thereafter renewed annually. From the record, it appears that at no time did Dealer question the validity or enforceability of the forum selection clause at issue or the validity of the underlying contract. Dealer had opportunity to do this in the ensuing two and a half years, including two renewals of the contract prior to the alleged breach.

the forum selection clause, the Iowa District Court in Scott County is the exclusive venue for any action concerning the Network Support Agreement. *See e.g., Milk 'N' More, Inc.*, 963 F.2d at 1345–46 (finding wording in forum selection clause similar to the clause in this case was reasonably clear that proper venue was state court in the named county). The mandatory nature of the forum selection clause establishes that Dealer has waived its right to removal. *See Air Ion Devices, Inc.*, 2002 WL 1482665 at *3.

Based on the findings of the Court that the forum selection clause located in the Network Support Agreement is enforceable, mandatory, and exclusive, Count I of RK Dixon's petition should have been brought, as it originally was, in the Iowa District Court for Scott County. Thus, the forum selection clause in the Network Support Agreement may be a basis for remand of this action. Because Plaintiff's petition contains claims based on *two* contracts between the parties, the Court must determine what effect, if any, this has on the motion for remand of this action.

### 4. Count II of Plaintiff's Petition: Breach and Repudiation of Hot Site Agreement.

The Hot Site Agreement does not contain a forum selection clause. This is a separate and distinct contract from the Network Support Agreement discussed above. Dealer goes to great lengths in its reply brief to argue that the purported breach of RK Dixon renders the Hot Site Agreement void and unenforceable, thereby invalidating the forum selection clause in this Agreement. This argument is inapposite because, as noted above, the Hot Site Agreement does not contain a forum selection clause. The forum selection

clause at issue is contained in the Network Support Agreement between the parties. This contract preceded the Hot Site Agreement, and the validity (or asserted invalidity) of the Hot Site Agreement bears no relationship to the enforceability of the forum selection clause contained in the Network Support Agreement.

It was RK Dixon's alleged breach of this contract, however, that precipitated Dealer's failure to pay outstanding balances for work performed under the Network Support Agreement and a lockout of RK Dixon employees from Dealer's premises. Thus, it appears important to hear both of the claims brought by RK Dixon in the same proceeding.

### 5. Remand in actions based on diversity jurisdiction.

The twist in the present lawsuit is that, as noted above, only one of the agreements between the parties in the present action contained a forum selection clause. RK Dixon's petition contained two causes of action related to the alleged breach of the agreements.[8] Each cause of action encompasses only one of the agreements at issue—Claim I concerned the Network Support Agreement while Claim II concerned the Hot Site Agreement. Only the Network Support Agreement at issue in RK Dixon's Claim I contained a forum selection clause. The case was removed based on diversity jurisdiction as complete diversity exists between the parties and the amount in controversy was greater than $75,000. Had the two claims been brought separately, only Claim II would still qualify for removal based on diversity jurisdiction. This is because the amount of damages sought in Claim I of Plaintiff's petition did not meet the amount in controversy requirement.[9]

---

8. The petition also alleges repudiation only of the later contract, the Hot Site Agreement.

9. Plaintiff's petition seeks judgment against Defendant on Count I in the amount of

One potential resolution to the conundrum presented would be a partial remand where the two counts are severed and Count I is remanded on the grounds of the presence of the forum selection clause in the Network Support Agreement at issue in this claim. Count II would then remain with this Court and would be subject to Dealer's motion to dismiss, transfer or stay. While the Court recognizes the inherent irony in this potential action as it would result in claims based on the relationship and agreements of the parties being located in three separate venues (one state court and two federal district courts), the circumstances may dictate such a procedure under the removal and remand statutes. The Court must therefore determine whether such partial remand is allowable on a claim based on diversity jurisdiction.[10]

It is generally recognized that partial remand is available in some circumstances. *See e.g.*, Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3724, at 66 ("The cases do seem to agree

that the separate and independent federal claim can be retained by the federal court even if the separate and independent non-removable claim must be remanded.").[11] However, in *Bristol–Myers Squibb Co. v. Safety National Casualty Corp.*, the court found "authority for piecemeal or partial remand exists only when removal jurisdiction is based on existence of a federal question. [The defendant] does not cite, and the court's independent research fails to disclose authority for a partial remand in actions based on diversity." *Bristol–Myers Squibb Co. v. Safety Nat'l Cas. Corp.*, 43 F.Supp.2d 734, 743–44 (E.D.Texas 1999). Likewise, the court in *Riverside Transportation, Inc. v. Bellsouth Telecommunications, Inc.*, held it had to remand an entire class action to the state court because it could "no longer divide claims where the Court's jurisdiction is based on § 1332." *Riverside Transp., Inc.*, 847 F.Supp. at 457. Although this may constitute limited precedent in this area, the conclusion is consistent with the essential

---

$47,773 plus interest; judgment is sought against Defendant on Count II in the amount of $236,700.

**10.** The general removal statute, 28 U.S.C. § 1441(c) reads:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c). 28 U.S.C. § 1331 is the general federal question statute. The 1990 amendment to 28 U.S.C. § 1441(c) made it inapplicable to cases founded on § 1332 diversity jurisdiction. *See Riverside Transp., Inc. v. Bellsouth Telecomm., Inc.*, 847 F.Supp. 453, 457 (M.D.La.1994) ("The 1990 amendment to 1441(c) rendered it inapplicable to diversity cases."); *Baylor v. Dist. of*

*Columbia*, 838 F.Supp. 7, 9 (D.D.C.1993) (discussing the language of section 1441(c) and the effect of the 1990 amendment on this section); *see also* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3724, at 8–9 ("Thus, the amendment eliminated the use of diversity of citizenship jurisdiction claims as the basis for removing claims under Section 1441(c).").

**11.** *But compare,* 28 U.S.C. § 1447(c). This section contains the procedure following removal, subsection c specifically providing for remand procedure. As one district court recognized, although the Supreme Court has "'left open the possibility that § 1447(c) might permit [partial remand],' neither the Ninth Circuit nor the Supreme Court have held that Section 1447 *does* allow partial remand where there is lack of subject matter jurisdiction over some claims." *Nishi v. Ethicon, Inc.*, 2003 WL 917978 *3 (N.D.Cal.) (discussing and quoting in part *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 1008 (9th Cir. 2001)).

point of departure that this is a court of limited jurisdiction.

Based on the statutory and case law discussed above, this Court finds a federal court cannot resort to partial remand of an action that is properly before the court on diversity jurisdiction. If partial remand is not available, the issue then becomes whether to remand the entire action or keep the entire action and disregard the forum selection clause contained in one of the agreements.

There is also some question as to whether remand of the entire action would be possible where, as here, at least part of the action is properly before the court based on diversity. *See Buchner v. F.D.I.C.*, 981 F.2d 816, 817 (5th Cir.1993) ("a court has no discretionary authority to remand a case over which it has subject matter jurisdiction"); *Allstate Ins. Co. v. Longwell*, 735 F.Supp. 1187, 1191 (S.D.N.Y.1990) ("where there is diversity jurisdiction, which is non-discretionary, the court may not eliminate the case from its docket, whether by a remand or a dismissal") (citing *Carnegie–Mellon Univ.*, 484 U.S. at 356, 108 S.Ct. at 621).[12]

■ While RK Dixon has made a compelling argument for remand of this action, the Court finds it is unable to grant that motion. The existence of the forum selection clause would be reason to remand this action if the agreement containing this provision encompassed the entire lawsuit brought by the Plaintiff. Because the lawsuit also claims damages due to breach and rescission of a second agreement, which does not contain a forum selection clause, and because the suit was properly removed under the Court's diversity jurisdiction, the Court finds it must deny RK Dixon's motion to remand. The Court is

unable to separate the claims brought by the Plaintiff and cannot remand the entire action. As a result, the Court will not enforce the forum selection clause located in the Network Support Agreement by ordering a remand of this action on the bases that to do so would create grave inconvenience and enforcement would be unreasonable under the circumstances. Instead, the entire lawsuit brought by RK Dixon will remain in this Court.

### B. Defendant Dealer's Motion to Dismiss, Transfer or Stay.

Having denied Plaintiff's motion to remand, thereby keeping all of the Plaintiff's lawsuit with this Court, the Court must address Defendant's motion to dismiss, transfer or stay. This motion is based primarily on the first-filed rule. Dealer also argues that transfer is proper under 28 U.S.C. § 1404.

### 1. First-filed Rule.

■ The Eighth Circuit Court of Appeals has recognized the "first-filed rule." *See Terra Int'l, Inc.*, 922 F.Supp. at 1344 (citing *Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir. 1993)). *See also United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990). The first-filed rule has been set out in the Eighth Circuit as follows:

> The well-established rule is that in cases of concurrent jurisdiction, "the court in which jurisdiction first attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but it is to be applied in

---

**12.** While the court in *Riverside Transportation, Inc. v. Bellsouth Telecommunications, Inc.* remanded the entire action, this was due in part to the nature of the lawsuit as a class action and is distinguishable from the present action.

a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

*Northwest Airlines,* 989 F.2d at 1005 (quoting *United States Fire Ins. Co.,* 920 F.2d at 488–89). *See also Terra Int'l, Inc.,* 922 F.Supp. at 1344 (quoting this language from *Northwest Airlines,* 989 F.2d at 1005). In other words, this rule " 'gives priority, for choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.' " *Midwest Motor Express, Inc. v. Central States Southeast & Southwest Areas Pension Fund,* 70 F.3d 1014, 1017 (8th Cir.1995) (quoting *Northwest Airlines,* 989 F.2d at 1006). *See also Terra Int'l, Inc.,* 922 F.Supp. at 1344.

The first-filed rule is not to be mechanically applied. *Terra Int'l, Inc.,* 922 F.Supp. at 1346. As a result, there are several exceptions to the first-filed rule. *See id.* at 1346–55 (discussing three exceptions to the first-filed rule that have been accepted in the Eighth Circuit). One of these exceptions, the so-called "dead heat" exception, is relevant to this case.

The "dead heat" exception arises when the closeness of filing times of petitions makes application of the rule inappropriate. *Id.* at 1350. The "dead heat" exception can stand alone when, under the circumstances, it is impossible to determine who filed first. *Id.* at 1353.[13] When a "dead heat" occurs, the first-filed rule is inapplicable. *See id.* at 1351–52 (finding that a "dead heat" obviates "automatic application of the first-filed rule."); *Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1153 (S.D.N.Y.1995) ("Here, because the lawsuits were both filed on the same day, the first-filed rule is inapplicable."). " '[T]he courts should be concerned with what the interests of justice require and not with who won the race [to the courthouse].' " *Terra Int'l, Inc.,* 922 F.Supp. at 1352 (internal citations omitted).

While Dealer's memorandum of law in support of motion to transfer or stay maintains there is no question that Dealer's suit was first-filed, the Court does question which suit was filed first. As RK Dixon argues, and as is apparent in Dealer's own motion to dismiss, transfer or stay, the complaint filed by Dealer in federal court in Rock Island and RK Dixon's petition filed in Scott County were *both* filed on July 2, 2003.[14] This is evidenced by the

---

**13.** Because this is just such a case, where it is impossible to determine who filed first, the Court does not make any determination as to how close in time the filings must be in order to qualify for application of the "dead heat" exception. For further discussion of the dead heat exception and cases where timing did play a role, *see Terra Int'l, Inc.,* 922 F.Supp. at 1350–54.

**14.** While the Eighth Circuit has not defined the phrase "the first court in which jurisdiction attaches," it has been found that jurisdiction relates back to when the complaint was filed. *Med–Tec Iowa, Inc. v. Nomos Corp.,* 76 F.Supp.2d 962, 968 n. 3 (N.D.Iowa 1999) (citing *Hospah Coal Co. v. Chaco Energy Co.,*

673 F.2d 1161, 1163 (10th Cir.1982)). The court in *Med–Tec Iowa, Inc.,* went on to conclude "that 'the first court in which jurisdiction attaches' means the first court in which a civil action is properly commenced." *Id.* When a case is removed from state court to federal court, it is the state rules that control the determination of commencement. *Id.* at 968. Therefore, the proper date for determining when jurisdiction attaches to the state action later removed to this court is when it was commenced according to Iowa rules. In Iowa, a case is properly commenced by filing a petition with the court. Iowa R. Civ. P. 1.301(1) (2003). Thus, the date of commencement of this action is July 2, 2003, the date it was originally filed in state court.

time stamps on the respective petitions. What is not evident is the exact timing of the filing of the petitions. The petition filed by RK Dixon in Scott County is time-stamped 10:47 a.m. Meanwhile, the petition filed by Dealer in federal court in Rock Island is not time-stamped. Regardless of which was actually filed first, the actual timing of the filing is irrelevant as both pleadings appear to have been filed nearly simultaneously. As a result, the so-called "dead-heat" exception to the first-filed rule renders the rule inapplicable in this case.

### 2. § 1404 Transfer.

■ While the first-filed rule is inapplicable in this case, the Court may still transfer the case pursuant to the federal transfer statute located in 28 U.S.C. § 1404. This section allows for transfer of actions between federal district courts. Here, Dealer seeks transfer of this action from the United States District Court for the Southern District of Iowa, Davenport Division, to the United States District Court for the Central District of Illinois, Rock Island Division.

The district court has wide discretion to adjudicate motions for transfer under section 1404 on a case-by-case basis, taking into consideration convenience and fairness. *Terra Int'l, Inc.*, 922 F.Supp. at 1357 (quoting *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. at 2244). *See also Library Publ'ns, Inc. v. Doubleday & Co.*, 414 F.Supp. 1185, 1187 (E.D.Pa.1976) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973)). Section 1404 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The important factors in a § 1404 transfer analysis are the balance of convenience, the interests of justice, and "other relevant factors". *See Terra Int'l, Inc.*, 922 F.Supp. at 1357–65 (discussing the factors in a transfer analysis under 28 U.S.C. § 1404). The plaintiff's choice of forum is afforded great weight in any determination to transfer under this section. *Id.* at 1356 (citations omitted).

The first factor for a court to consider is the balance of convenience. It has been held that the signing of a valid forum selection clause constitutes a waiver of the right to assert the inconvenience of the moving party as grounds for a change of venue. *Northwestern Nat'l Ins. Co.*, 916 F.2d at 376–77; *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989). Thus, any inconvenience to Dealer has been waived by it, at least as to Count I of the Plaintiff's petition. The Court also fails to see any inconvenience to third parties (i.e., potential witnesses) due to the nature of the Quad Cities area. While this area encompasses cities in two states, both Davenport, Iowa, and Rock Island, Illinois, are sufficiently close in proximity, separated only by the Mississippi River, that neither location would be inconvenient to any third parties involved in this lawsuit.[15]

The second factor to be considered under section 1404 is the interest of justice. It is not apparent what criteria make up this factor (as far as it is separable from the balance of convenience factor[16]). *See*

---

**15.** In fact, due to construction on the federal courthouse located in Davenport, all current proceedings of the Davenport Division of the Southern District of Iowa are being held in the federal courthouse in Rock Island.

**16.** "Courts have generally treated the 'interest of justice' as a separate factor they must consider." *Terra Int'l, Inc.*, 922 F.Supp. at 1362 (citing examples of cases where "interest of justice" has been considered a separate factor).

*Terra Int'l, Inc.*, 922 F.Supp. at 1362. Judicial economy is one factor that can be considered under the interest of justice factor, although alone it is probably insufficient as the ground for transfer. *See id.* at 1362–63 (citing *In re Warrick,* 70 F.3d 736, 740 (2nd Cir.1995)). While judicial economy may be served by transfer of this action, there remains the issue that Dealer's action brought in Illinois does not contain reference to the breach alleged by RK Dixon of the Network Support Agreement. The "interest of justice" would require the Court to take this into consideration.

A court should also consider other relevant factors in analyzing a motion to transfer under section 1404. *See Terra Int'l, Inc.*, 922 F.Supp. at 1364 (citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)) (the relevant factors being the "many variants of the private and public interests protected by the language of § 1404(a)"). The presence of a forum selection clause has been singled out as a relevant factor to be considered by the court in making a § 1404 transfer determination. *See Terra Int'l, Inc.*, 922 F.Supp. at 1364–65 (citing *Jumara,* 55 F.3d at 880). While not dispositive in the transfer analysis,[17] a forum selection clause is a significant and substantial factor. *Id.* at 1365–66 (citing *Stewart Org., Inc.*, 487 U.S. at 31, 108 S.Ct. at 2244–45); *Jumara,* 55 F.3d at 880; *Brock v. Entre Computer Ctrs., Inc.,* 933 F.2d 1253, 1257–58 (4th Cir.1991); *Moses v. Business Card Exp., Inc.,* 929 F.2d 1131, 1136 (6th Cir.1991). *See also* Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3848 (discussing the weight to be given a contractual choice of forum under § 1404(a)). The

decision of "whether or not to enforce the forum selection clause is a question of *federal* law." *Terra Int'l, Inc.*, 922 F.Supp. at 1367.

The Court has already determined that the forum selection clause is both reasonable and mandatory. Based on this determination, the existence of the forum selection clause in the Network Support Agreement, which makes up part of RK Dixon's claims, weighs heavily against transfer of this action to the federal court in Rock Island.

Another relevant factor is the equitable consideration of whether one action was filed in anticipation of the pending filing of the opposing party. *Ven–Fuel, Inc. v. Dept. of the Treasury,* 673 F.2d 1194, 1195 (11th Cir.1982); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2nd Cir. 1978). RK Dixon has provided some evidence in its Resistance to Motion to Dismiss, Transfer or Stay that it did send a notice letter to Dealer regarding alleged breaches of the two agreements between the parties. This letter, dated June 11, 2003, demanded resolution and payment or legal action would be commenced against Dealer. Both parties filed suit in their respective forums on July 2, 2003. The letter, coupled with the fact that both parties filed on the same day, tends to indicate that Dealer, as recipient of the demand letter, reacted to the threat of a lawsuit by RK Dixon by filing its own lawsuit.

The burden is on the moving party to establish there should be a change of forum under § 1404(a). *See In re United States,* 273 F.3d 380, 388 (3d Cir.2001); *Jumara,* 55 F.3d at 879. *See also Factors*

---

17. "In other words, a valid forum-selection clause may waive a party's right to assert his own convenience as a reason to transfer a case, but district courts still must consider whether the 'interest[s] of justice' or the 'con-

venience ... of witnesses' require transferring a case." *Heller Fin., Inc.,* 883 F.2d at 1293 (quoting *Plum Tree, Inc.,* 488 F.2d at 757–58).

*Etc., Inc.,* 579 F.2d at 218 ("There can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum."). Taking into consideration the interests of justice and balance of convenience of the parties, as well as the presence of a forum selection clause, Dealer has failed to meet its burden as the moving party. Transfer of this lawsuit is not appropriate under § 1404(a).

Likewise, Dealer's motion for the court to stay this lawsuit pending resolution of the lawsuit in Illinois federal court is denied. This lawsuit, as stated above, contains a claim for the alleged breach of the Network Support Agreement. Neither this claim nor this Network Support Agreement is part of the lawsuit pending in the lawsuit in Illinois federal court. For these same reasons, the Defendant's motion to dismiss is denied.

### CONCLUSION

Based on the foregoing discussion and the facts and unusual posture of this case, the Court denies both of the pending motions in this action. While RK Dixon makes a good argument for remand based on the forum selection clause, this clause is only found in one of the agreements at issue in this lawsuit. Additionally, the Court does not have discretion to separate the claims and grant partial remand where the action is before this Court on diversity jurisdiction. The Court does afford some weight to the forum selection clause by keeping the case in an Iowa-based court, albeit in federal court rather than state court.

As for Dealer's Motion to Dismiss, Transfer or Stay, Dealer did not provide sufficient reason to transfer the case to the Illinois federal court. Because the Court needs to take into account the Plaintiff's choice of forum, evidenced here both by where RK Dixon filed its petition *and* by

the forum selection clause, Dealer has failed to meet its burden for the Court to order transfer of this action. For some of these same reasons, dismissal or a stay is inappropriate here. In addition, this action contains a claim based on the Network Support Agreement which is not in issue in the Illinois action. It would be fundamentally unfair to RK Dixon to dismiss or stay this action as it would potentially lose the ability to pursue the breach of this contract.

Accordingly, RK Dixon's Motion to Remand (Clerk's No. 3) is **DENIED**, and Dealer's Motion to Dismiss, Transfer or Stay (Clerk's No. 4) is **DENIED**.

**IT IS SO ORDERED.**